UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE LASALLE GROUP, INC.,

    Plaintiff,

v.

                              Case No. 10-14380

                              Honorable Patrick J. Duggan

JST PROPERTIES, L.L.C., d/b/a GULF
COAST CONSTRUCTION, L.L.C., and
AMERICAN CONTRACTORS
INDEMNITY COMPANY,

    Defendants.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 29, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                        U.S. DISTRICT COURT JUDGE

On September 16, 2010, The LaSalle Group, Inc. ("LaSalle") filed this suit in Wayne County Circuit Court, alleging that JST Properties, L.L.C. d/b/a Gulf Coast Construction, L.L.C. ("Gulf Coast") and American Contractors Indemnity Company ("ACIC") breached contracts in connection with the construction of a school building. Before the Court are cross-motions for summary judgment filed by LaSalle and ACIC.[1] The matter has been fully briefed by the parties, and the Court heard oral argument on July 21, 2011. For the

---

[1] The Court entered a default judgment against Gulf Coast on April 9, 2011.

reasons stated below, the Court grants ACIC's motion in part and denies LaSalle's motion.

## I. Factual and Procedural Background

The facts of this case do not appear to be in dispute. LaSalle, a general contractor, obtained a contract for the construction of a school building in Gulfport, Mississippi. On December 2, 2008, LaSalle subcontracted with Gulf Coast for the completion of certain concrete work on this project. *See* Compl. Ex. A. The subcontract provided that Gulf Coast was required to post both a performance bond and a payment bond for the full subcontract price, and would be paid $334,800 for the work. Gulf Coast obtained the necessary bonds from ACIC through a broker, Surety Bond Brokers of Louisiana ("Surety Bond Brokers"). *See* Compl. Exs. B, C. These bonds used American Institute of Architects Document A312, a form commonly used by sureties.

At some point during construction, LaSalle learned that Gulf Coast was not paying its vendors and subcontractors. On May 26, 2009, Ryan Philbeck, LaSalle's project manager, sent an e-mail message to Michael Leeks, a Gulf Coast member, stating in part:

> This message serves as 72-hour notice of formal Default in accordance with your Subcontract Agreement with LaSalle. Your company must pay ALL outstanding supplier, labor, equipment, material, etc. invoices within 72 hours to remedy this default action. Your bonding company will be notified today of this pending action.

LaSalle Br. Supp. Mot. Summ. J. Ex 2 at 1. Philbeck contacted Surety Bond Brokers via telephone the same day and explained the situation. Philbeck Aff. ¶ 8. Gulf Coast failed to make the necessary payments, and on June 1, 2009, Philbeck sent Leeks a letter stating:

> Pursuant to our written correspondence to your company on May 26, 2009, and our verbal conversation on May 28, 2009, LaSalle has determined that your subcontract agreement must be terminated due to the failure of your company

> to make required payments to your suppliers, vendors, and labor forces, which constitutes an inability on your part to fulfill the terms and conditions of the Contract Documents.
>
> . . . .
>
> LaSalle has submitted a formal claim against your payment and performance bonds with American Contractors Indemnity Company. We will be working with the bonding company to resolve all remaining work and supplier issues.

LaSalle Br. Supp. Mot. Summ. J. Ex 4. On June 8, 2009, LaSalle's counsel sent a letter to ACIC, providing in pertinent part:

> Gulf Coast has failed to properly perform its work and has failed to pay its subcontractors and suppliers pursuant to the terms of its Contract. Our client has paid all amounts owed to Gulf Coast for the work it performed on the Project, and due to Gulf Coast's failure to perform and failure to pay its subcontractors and suppliers, LaSalle has been forced to terminate Gulf Coast's Contract prior to the completion of Gulf Coast's scope of work. LaSalle was further forced to back charge Gulf Coast's Contract for work improperly performed as well as for equipment and materials.
>
> . . . .
>
> LaSalle therefore asserts its claim against the payment bond (1000820402) and the performance bond (1000820402) (the "Bonds") issued by your company. The claim on the payment bond is in the amount of at least $71,843.15, which includes the outstanding amounts owed to Gulf Coast's suppliers, and back charges properly assessed to Gulf Coast. Gulf Coast will be given seven (7) days within which to complete its Contract work. If it fails to do so, the claim on the performance bond will be in at least the amount of $50,000. This Notice of Claim is provided in satisfaction of our claimant's obligations under the Bonds.

LaSalle Br. Supp. Mot. Summ. J. Ex 5 at 1-2.

ACIC's counsel replied in a letter dated June 19, 2009, stating that ACIC had retained Robert C. Gentle Construction Consultants, L.L.C. to investigate the claim. *See* ACIC Reply Br. Ex. A at 1. In that letter, ACIC requested various documents relating to

3

the project and the Gulf Coast subcontract in particular.  ACIC also requested clarification on the subcontract's status, noting that while LaSalle's letter stated that the contract was terminated, it also stated that Gulf Coast would be given seven days to complete the work. *Id.* at 2.  LaSalle responded in a letter dated July 10, 2009, stating that $45,000 was left on the contract.  ACIC Br. Supp. Mot. Summ. J. Ex. F.  The letter further provided that "[t]he contract has been terminated and LaSalle has hired its own trades to complete Gulf Coast's scope of work." *Id.*

On March 11, 2010, ACIC denied LaSalle's claim on the performance bond for failure to comply with several conditions precedent.  LaSalle subsequently filed this suit, seeking damages of $468,573.79 for Gulf Coast's alleged breach of the subcontract and ACIC's alleged breach of its obligations under the performance and payment bonds.  ACIC removed the suit to this Court, and both LaSalle and ACIC have filed cross-motions for summary judgment.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *See*

4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

### III. Choice of Law

The parties dispute which state's law applies to the bonds at issue. A federal court sitting in diversity jurisdiction applies the substantive law of forum state, including choice-of-law rules. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). The Court therefore applies Michigan choice-of-law rules.

With respect to contractual disputes, Michigan courts have adopted the approach of the Second Restatement of Conflict of Laws. *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 301 (6th Cir. 2008) (citing *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 528 N.W.2d 698 (Mich. 1995)). The Second Restatement specifically addresses contracts

5

of suretyship:

> The validity of a contract of suretyship and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the law governing the principal obligation which the contract of suretyship was intended to secure, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 194. LaSalle asserts that because the bonds incorporate the subcontract's choice-of-law provision by reference, they are governed by Michigan law. ACIC contends that the choice-of-law provision applies only to the subcontract. Regardless of the scope of this provision, application of § 194 leads to the same result, as the principal obligation secured by the bonds (the subcontract) is governed by Michigan law. Michigan law therefore governs unless another state has a more significant relationship to the transaction and the parties. ACIC asserts that Mississippi has a more significant relationship to the transaction, as it is the state in which the project was located. The comments to § 194, however, provide that application of the law of the state governing the principal obligation is justified where that state is the domicile of either the creditor or the surety. *Id.* cmt. c. LaSalle, the creditor, is a Michigan corporation with its principal place of business in Michigan. Compl. ¶ 1. Accordingly, the Court applies Michigan law.

## IV. LaSalle's Claims

### A. Performance Bond Claim

LaSalle asserts that ACIC failed to honor its obligations under the performance bond. Compl. ¶ 39. ACIC disagrees, arguing that its obligations were subject to conditions

precedent that LaSalle failed to satisfy. "A 'condition precedent' is a condition that must be met by one party before the other party is obligated to perform." *Archambo v. Lawyers Title Ins. Corp.*, 466 Mich. 402, 411, 646 N.W.2d 170, 176 (Mich. 2002). The relevant portion of the performance bond contract provides:

> 3. If there is no Owner Default, the Surety's obligation under this Bond shall arise after:
>
> 3.1 The Owner has notified the Contractor and the Surety at its address described in paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and
>
> 3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and
>
> 3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

Compl. Ex. C ¶ 3. These provisions constitute conditions precedent, as the contract clearly states that the surety's obligation "shall arise after" the conditions are satisfied.

### 1. Conditions Requiring Notice to the Surety

The first condition requires the bond owner to notify the surety and contractor that it is considering declaring a default. The owner must notify the surety "at its address described in paragraph 10." *Id.* ¶ 3.1. Paragraph 10 refers to the address "shown on the

7

signature page," which for ACIC is 9841 Airport Boulevard, 9th Floor, Los Angeles, California. LaSalle "felt that it was communicating with ACIC" when it notified Surety Bond Brokers of the issues with Gulf Coast, Philbeck Aff. ¶ 11, but such communication fails to satisfy the performance bond's notice requirement, which plainly states the actions LaSalle was required to take. The evidence before this Court indicates that the earliest notice to ACIC of LaSalle's intent to declare a default was the June 8, 2009 letter in which LaSalle stated that it had terminated the Gulf Coast contract and was asserting a claim on the payment and performance bonds. There is also no indication that LaSalle attempted to arrange a conference with Gulf Coast and ACIC to discuss methods of performing the construction, as the first condition requires.

Even if the June 8 letter satisfied the first condition, the second condition was not satisfied, as it requires that a default "shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1." Compl. Ex. C ¶ 3.2. The same June 8 letter stated that LaSalle "has been forced to terminate Gulf Coast's Contract," and purported to assert claims against the payment and performance bonds. LaSalle did not wait the necessary twenty days before declaring default and terminating the subcontract.

LaSalle argues that the performance bond incorporates the subcontract's terms, *see* Compl. Ex. C ¶ 1, rendering the bond's notice requirements unenforceable. The Court disagrees. The subcontract required LaSalle to give Gulf Coast three working days' written notice before declaring a default. Compl. Ex. A § 4.1. This provision makes no mention of the notice that must be given to a surety. Thus, it does not conflict with the

8

performance bond's requirement that LaSalle provide ACIC with twenty days' notice before declaring a default. The Court can see no basis for concluding that the performance bond's notice requirements are unenforceable. LaSalle could have complied with both contracts' provisions, yet failed to do so.

Although the performance bond's conditions were not satisfied, this finding is not dispositive with respect to ACIC's obligations under the bond. "The rule in Michigan is that failure to give notice promptly as required in the bond does not in and of itself release the surety unless the surety has been prejudiced or suffered loss by reason of such failure." *MacNear v. Malow*, 282 Mich. 239, 243, 276 N.W. 433, 434 (Mich. 1937); *see also Rose v. Ramm*, 254 Mich. 259, 261-62, 237 N.W.60, 61 (Mich. 1931) ("Failure to give notice of default of principal does not discharge a paid surety unless loss is shown therefrom."). At the hearing, ACIC argued that it was unable to exercise its contractual right to mitigate the cost of project completion because LaSalle unilaterally selected a replacement contractor. ACIC contends that sureties normally participate in selecting replacement contractors and are typically able to ensure that a job is completed in a cost-effective manner. This is perhaps true, but ACIC has not presented evidence establishing that such a prejudicial loss occurred in this case. There is no evidence before the Court suggesting that ACIC could have ensured the project's completion at a lower cost if LaSalle had provided timely notice of its intent to declare a default. Thus, the Court cannot conclude as a matter of law that LaSalle's failure to satisfy the bond's notice conditions discharged ACIC's obligations.

ACIC argues that Michigan law does not require prejudice to discharge a surety's obligations, relying on *Jackson v. State Farm Mut. Auto Ins. Co.*, 472 Mich. 942, 698

9

N.W.2d 400 (Mich. 2005).  In that case, the trial court granted summary disposition for an insurer.  The Michigan Court of Appeals reversed and remanded, holding that the notice provision of the insurance policy at issue was ambiguous and unenforceable.  *Jackson v. State Farm Mut. Auto Ins. Co.*, No. 246388, 2004 WL 2239502, at *3 (Mich. Ct. App. Oct. 5, 2004) (per curiam).  Because the notice provision was ambiguous, the Court of Appeals declined to address the insured's argument that the notice provision was enforceable only where the insurer could prove actual prejudice.  *Id.*  The dissent concluded, *inter alia*, that the court should enforce the notice provision, which was a condition precedent to the insurer's obligations, according to its unambiguous terms.  *Id.* at *6 (Griffin, J., dissenting).  The Michigan Supreme Court subsequently vacated the decision of the Court of Appeals in a one-paragraph order, reinstating the trial court's order "for the reasons stated in the Court of Appeals dissent."  *Jackson*, 472 Mich. 942, 698 N.W.2d 400 (Mich. 2005).  It is unclear, however, whether the Michigan Supreme Court intended in this brief order to overturn longstanding precedent requiring a surety to establish prejudice to escape an obligation based on failure to satisfy notice requirements.

### 2. Condition Requiring Agreement to Pay the Remaining Contract Balance

The third of the three conditions precedent listed in the performance bond requires that "[t]he Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner."  Compl. Ex. C ¶ 3.3.  ACIC argues that LaSalle never offered to make any such payment.  LaSalle contends that no balance remained on the contract because it paid the

balance to replacement contractors to complete or repair Gulf Coast's work. Although no Sixth Circuit authority appears to squarely address this issue, courts of other jurisdictions appear to have uniformly rejected LaSalle's position, holding that the hiring of a replacement contractor fails to satisfy the requirement of paragraph 3.3. *See Stonington Water Street Assoc., LLC v. Hodess Bldg. Co.*, 2011 WL 861688, at *11 (D. Conn. Mar. 9, 2011) (hiring of replacement contractor deprived surety of opportunity to exercise its rights, including replacement contractor selection); *Enter. Capital, Inc. v. San-Gra Corp.*, 284 F. Supp. 2d 166, 177 (D. Mass. 2003) (hiring of replacement contractor deprived surety of the right to mitigate damages by participating in the hiring); *School Bd. of Escambia County, Fla. v. TIG Premier Ins. Co.*, 110 F. Supp. 2d 1351, 1354 (N.D. Fla. 2000) (collecting cases holding that such action is a material breach discharging surety's obligations); *Solai & Cameron, Inc. v. Plainfield Cmty. Consol. School Dist. No. 202*, 374 Ill. App. 3d 825, 838-39, 871 N.E.2d 944, 955 (Ill. App. 2007) (hiring of replacement subcontractor failed to satisfy requirement of ¶ 3.3).

Notably, LaSalle has failed to provide any legal authority in support of its position. LaSalle points to *Kilpatrick Bros. Painting v. Chippewa Hills School Dist.*, No. 262396, 2006 WL 664210 (Mich. Ct. App. Mar. 16, 2006), an unpublished per curiam opinion of the Michigan Court of Appeals, but the case is readily distinguishable. *Kilpatrick* involved the same performance bond form as used here, and the surety agreed that the requirements of paragraph 3.3 were satisfied, as the creditor had offered in writing to pay the balance of the contract to the surety. *Id.* at *3. No such offer occurred here, as LaSalle apparently hired a replacement contractor before even responding to ACIC's June 8, 2009

request for clarification on the subcontract's status. *Kilpatrick* does not support LaSalle's argument that it satisfied the performance bond's conditions precedent.

LaSalle argues that the subcontract provided it with the right to change the payment terms, and thus, ACIC cannot complain about payments that reduced the contract balance. LaSalle indeed retained the right to change payment terms, *see* Compl. Ex. A § 14, but the Court cannot agree that this permitted the hiring of a replacement contractor. Under the performance bond, ACIC had the right to participate in the selection of a replacement contractor or perform the necessary work itself. *See* Compl. Ex. C ¶ 4. LaSalle's decision to hire replacement a contractor effectively deprived ACIC of that right, and cannot be considered a simple change in payment terms.

The Court concludes that LaSalle failed to satisfy the condition precedent set forth in paragraph 3.3. Accordingly, ACIC was not obligated to perform. *Archambo*, 466 Mich. at 411, 646 N.W.2d at 176. ACIC must therefore be granted summary judgment with respect to LaSalle's performance bond claim.

**B. Payment Bond Claim**

LaSalle has also asserted a claim against the payment bond, arguing that it was forced to make payments totaling $20,673.89 to a Gulf Coast subcontractor, Farris Concrete Pumping, LLC ("Farris"). ACIC contends that there is no evidence indicating that Farris was a Gulf Coast subcontractor, and thus, LaSalle's payments to Farris fall outside the scope of the payment bond. ACIC points to invoices obtained through discovery showing that Farris billed LaSalle directly for its work. *See* ACIC Surreply Br. Ex. B. ACIC argues that this indicates that Farris worked for LaSalle directly, rather than

12

Gulf Coast. LaSalle contends that once Gulf Coast ceased making payments, Farris refused to continue its work unless it could bill LaSalle directly. LaSalle has presented an invoice report listing Farris invoices under the Gulf Coast contract. *See* LaSalle Br. Supp. Mot. Summ. J. Ex. 7. This seems to indicate that Farris was a Gulf Coast subcontractor. The evidence before this Court is therefore inconclusive as to whether Farris was a Gulf Coast subcontractor. This dispute is material, because if the payments to Farris were for work unrelated to Gulf Coast's subcontract, they fall outside the scope of the payment bond. *See* Compl. Ex. B ¶ 1. Because a genuine dispute of material fact remains, the Court cannot grant summary judgment on the payment bond claim.

### V. ACIC's Overpayment Defense / Counterclaim

On January 14, 2011, ACIC filed an amended Answer, asserting as an affirmative defense against LaSalle's claims: "Any liability of ACIC to [LaSalle] is released and discharged (or partially released / discharged) based on [LaSalle's] overpayment to [Gulf Coast]." Am. Answer at 11, ¶ 22. ACIC also brought a counterclaim against LaSalle, arguing that the overpayment reduced the contract balance, which served as ACIC's collateral with respect to its indemnity and subrogation rights. ACIC asserts that it paid over $74,000 in claims brought by Gulf Coast's subcontractors and suppliers, and was damaged by LaSalle's overpayment. *Id.* at 12, ¶¶ 7-8. LaSalle seeks summary judgment with respect to ACIC's affirmative defense and its counterclaim, arguing that (1) ACIC has failed to establish prejudice as required by Michigan law, and (2) the counterclaim is barred by the subcontract's provisions.

Michigan law provides that under certain circumstances, a surety may be discharged

from its obligation if a bond owner makes payment to the contractor in violation of the terms of its contract. *Ramada Dev. Co. v. U.S. Fid. & Guar. Co.*, 626 F.2d 517, 520 (6th Cir. 1980) (citing *Sandusky Grain Co. v. Borden's Condensed Milk Co.*, 214 Mich. 306, 183 N.W. 218 (Mich. 1921)). The Sixth Circuit noted the rationale underlying this rule:

> The provisions in a building or working contract that the contractor or builder shall be paid as the work progresses according to the amount of materials furnished or work performed, upon estimates to be made by the supervising architect or engineer, whether a percentage is to be retained therefrom, until the whole is done or not, redounds to the benefit of a surety or guarantor of the party who is to fulfill the contract; and, upon payment being made in disregard of it, there is such a departure from the contract upon which the undertaking of the surety or guarantor is based that he is released. The purpose of such a stipulation is to guard against the consequences of a default, in case the principle contract proves a losing one, or the contracting party for any reason fails to comply, the percentage retained, where that is provided for, affording additional security, as well as holding out an incentive; and when it is not observed, and advance or overpayments are made, it is so obviously to the prejudice of the surety that it operates as a discharge as a matter of law.

*Id.* at 521 n.8 (quoting *Fid. & Deposit Co. v. Agnew*, 152 F. 955 (3d Cir. 1907)). The rule also requires, however, "that some injury, loss or prejudice accrue to a compensated surety following a departure from the terms of the contract before a surety may be discharged." *Id.* at 521. "Mere immaterial or technical departures from the contract, not resulting in any damage to the surety, will not release the surety." *Id.*

Reviewing the evidence before this Court in a light favorable to ACIC, the Court concludes that a genuine issue of fact remains with respect to ACIC's claim. Philbeck stated in an e-mail message to Leeks: "Your company is severely overpaid based on the invoices that we have received from your suppliers to date." LaSalle Br. Supp. Mot. Summ. J. Ex 2 at 1. Furthermore, according to LaSalle's responses to interrogatories, it

14

had paid Gulf Coast approximately 77% of the subcontract price as of May 26, 2009, even though only about 62% of the work had been completed. ACIC Reply Br. Ex. A ¶¶ 9-10. The subcontract provides for payment to Gulf Coast at the end of each month for work completed that month. *See* Compl. Ex. A § 2. Thus, the evidence indicates that LaSalle paid Gulf Coast for work not yet completed, in violation of the subcontract. The evidence is also sufficient to infer prejudice, as ACIC claims to have paid over $74,000 to Gulf Coast's subcontractors and suppliers due to the default. It is reasonable to infer that if LaSalle had not overpaid Gulf Coast, funds would have been available for ACIC to pay Gulf Coast's subcontractors and suppliers. The Court therefore concludes that a genuine dispute of fact remains with respect to ACIC's overpayment defense and counterclaim.

Relying on *Ramada*, LaSalle argues that ACIC's obligations cannot be discharged because the alleged overpayments were neither material nor substantial. The *Ramada* court's conclusion, however, was based on facts that have not been established here. The *Ramada* court noted that the bond owner made payments to the contractor based on a good faith belief that the payments would enable the contractor to complete the job. 626 F.2d at 522. It was also established that the payments were actually used by the contractor to further the completion of the project, benefiting the surety. *Id.* Given these facts, the court concluded that the discharge of the surety was improper. *Id.* Here, it is not clear whether LaSalle made the alleged overpayments under a good faith belief that they would enable Gulf Coast to finish the job. It is also unclear whether the payments were actually used by Gulf Coast to further the completion of the project. The Court cannot conclude as a matter of law that the alleged overpayment was immaterial.

15

LaSalle also contends that the performance bond incorporated the subcontract by reference, and the subcontract expressly permitted modification of payment terms absent the surety's consent.  LaSalle therefore concludes that by issuing the bond, ACIC waived any claim based on the adjustment of payment terms.  This argument lacks merit.  LaSalle has failed to present any evidence of a modification of payment terms; rather, it appears that the subcontract's terms were not enforced.  The alleged overpayment potentially diminished the value of ACIC's interest in the contract balance, and the Court does not believe that ACIC waived its rights to that balance simply by issuing the performance bond.  To the extent that LaSalle asserts that it could modify the subcontract so as to permit payment for incomplete or improperly completed work, the Court believes that this could constitute the sort of material change that would substantially alter the surety's liability, justifying the discharge of the surety's obligation.  *See Ramada*, 626 F.2d at 520.

## VI. Conclusion

For the reasons stated above,

**IT IS ORDERED** that ACIC's motion for summary judgment is **GRANTED** with respect to LaSalle's performance bond claim and **DENIED** as to the payment bond claim;

**IT IS FURTHER ORDERED** that LaSalle's motion for summary judgment is **DENIED**.

                                     s/PATRICK J. DUGGAN
                                     UNITED STATES DISTRICT JUDGE

Copies to:
Kelly M. Kammer, Esq.
Steven A. Wright, Esq.
Phillip G. Alber, Esq.
Omar J. Harb, Esq.