UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE LASALLE GROUP, INC., a Michigan
corporation,
      Plaintiff,

v.

JST PROPERTIES, L.L.C., d/b/a GULF
COAST CONSTRUCTION, L.L.C., a
Louisiana limited liability company, and
AMERICAN CONTRACTORS
INDEMNITY COMPANY, a California
surety company,
      Defendants.
_____/

Case No. 10-14380

Honorable Patrick J. Duggan

## **OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on December 15, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

In this action, The LaSalle Group, Inc. ("LaSalle") alleges that JST Properties, L.L.C. d/b/a Gulf Coast Construction, L.L.C. ("Gulf Coast") and American Contractors Indemnity Company ("ACIC") breached contracts in connection with the construction of a school building in Gulfport, Mississippi. LaSalle and ACIC filed cross-motions for summary judgment, and in an Opinion and Order dated July 29, 2011, the Court denied LaSalle's motion and granted ACIC's motion in part. LaSalle and ACIC have each filed a motion for reconsideration with respect to certain aspects of the Court's decision, and these motions are presently before the Court. For the reasons stated below, the Court

denies these motions.

## I. Standard of Review

The Court grants a motion for reconsideration only if the movant demonstrates that the Court and the parties have been misled by a palpable defect and that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(h)(3). A "palpable defect" is one that is "obvious, clear, unmistakable, manifest, or plain." *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001). "[T]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(h)(3). The purpose of a motion for reconsideration is not "to give an unhappy litigant one additional chance to sway the judge." *Pakideh v. Ahadi*, 99 F. Supp. 2d 805, 809 (E.D. Mich. 2000) (quoting *Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D. Va. 1977)).

## II. LaSalle's Motion for Reconsideration

**A. Satisfaction of the Condition Precedent**

In its July 29, 2011 Opinion and Order, the Court concluded that LaSalle failed to offer to pay the remaining contract balance to ACIC as required by the performance bond. Because this requirement was a condition precedent to ACIC's obligations, the Court concluded that ACIC was not obligated to perform. LaSalle contends that no balance remained on the contract because it had hired replacement contractors to complete Gulf Coast's work. LaSalle raised this argument in its motion for summary judgment, and the Court rejected it, citing case law holding that the bondholder's hiring of a replacement contractor does not satisfy this requirement. Moreover, the evidence before the Court

2

undermines LaSalle's position. When LaSalle contacted ACIC to assert a claim against the performance bond, ACIC inquired about the amount of the remaining contract balance. In a letter dated July 10, 2009, LaSalle's counsel stated: "The amount of $45,000 is left on the contract." ACIC Br. Supp. Mot. Summ. J. Ex. F. LaSalle focuses on costs incurred to hire replacement contractors, including Volvo Rentals, CMC, C&C, and Telco, arguing that these costs reduced the remaining contract balance. LaSalle Br. 5. These costs may have been *incurred* before LaSalle notified ACIC of Gulf Coast's default, but there is no evidence before the Court indicating that LaSalle *paid* these contractors, and LaSalle does not claim that it made these payments. If the balance had not yet been paid to the various contractors, then it must have retained by LaSalle. Thus, LaSalle could have offered to make payment of the remaining balance to ACIC as required by the performance bond.

LaSalle argues that the terms of the performance bond allowed it to satisfy this condition precedent by paying the contract balance directly to the replacement contractors rather than ACIC. The Court disagrees. Paragraph 3.3 of the performance bond provides that the surety's obligation arises after "[t]he Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner." LaSalle seems to conclude that this provision allows the bond owner to select replacement contractors, but the very next paragraph states that the *surety* shall "[a]rrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract." *See* Compl. Ex. C ¶ 4.1. Thus, LaSalle did not satisfy the condition by selecting its own replacement contractors and paying the contract

balance to those contractors.

**B. Requirement that the Surety Demonstrate Prejudice**

LaSalle argues that its failure to satisfy the performance bond's conditions precedent is irrelevant unless ACIC demonstrates actual prejudice. LaSalle cites *Hunters Pointe Ltd. Partnership v. U.S. Fidelity & Guaranty Co.*, 177 Mich. App. 745, 442 N.W.2d 778 (Mich. Ct. App. 1989) (per curiam), for the proposition that a surety must show actual prejudice before avoiding its obligations due to any "technical failure." In *Hunters Pointe*, the bond owner had assigned the bond and the underlying construction contract to a third party without the surety's consent. *Id.* at 749, 442 N.W.2d at 779. The surety requested equitable discharge of its obligation due to the assignment. As LaSalle notes, the court stated the rule as follows: "A prejudicial change in obligations or duties is necessary to discharge a paid surety from liability." *Id.* at 749, 442 N.W.2d at 779. However, the court's application of the rule appears to limit its reach to equitable discharge. The court first considered whether the assignment violated the performance bond's terms, and found that the terms actually contemplated assignment. *Id.* at 749, 442 N.W.2d at 779. Only then did the court examine whether prejudice had been established. Finding that prejudice had not been shown, the court concluded that the surety was not relieved of its obligation. *Id.* at 750, 442 N.W.2d at 780. Nothing in the decision indicates that a surety is required to establish prejudice where liability would be plainly inconsistent with the terms of the contract. The Court believes that *Hunters Pointe* cannot be read so broadly as to excuse violations of the performance bond's terms.

LaSalle points to the Michigan Supreme Court's decision in *Becker-Boter Oil & Gas*

4

*Co. v. Massachusetts Bonding and Insurance Co.*, 254 Mich. 94, 235 N.W. 869 (Mich. 1931), in which the court stated:

> Few, if any, construction contracts are executed in precise conformity with their terms, and it is the rule that where the bond for performance is executed by a paid surety, the latter is not released from liability by departure in execution of the contract unless the variation is material and operates to the injury of the surety.

*Id.* at 97, 235 N.W. at 870 (citing *People v. Fid. & Deposit Co.*, 238 Mich. 326, 213 N.W. 68 (Mich. 1927); *Realty Constr. Co. v. Kennedy*, 234 Mich. 490, 208 N.W. 455 (Mich. 1926); *People v. Bowen*, 187 Mich. 257, 153 N.W. 672 (Mich. 1915)). Careful review of *Becker-Boter* demonstrates that the "departure in execution" that must be prejudicial is a deviation from the terms of the underlying *construction* contract, rather than the *bond*. In *Becker-Boter*, the defendant surety argued that its obligation should be excused because the plaintiff bond owner breached the construction contract by failing to pay the contractor on time. The court disagreed, finding the surety's contention that prompt payment would have resulted in completion to be "untenable." *Id.* at 97, 235 N.W. at 870. The case did not involve an alleged deviation from the conditions of the bond contract.[1] ACIC does not assert that a breach of the LaSalle-Gulf Coast contract justifies release; thus, *Becker-Boter* is not controlling. Rather, ACIC contends that LaSalle failed to perform conditions required by the bond contract.

---

[1] The cases cited by the *Becker-Boter* court also concern deviations from the underlying contract rather than the bond contract, providing that in order to justify release of a surety's obligation, the deviation must be prejudicial. *See Fid. & Deposit Co.*, 238 Mich. at 330, 213 N.W. at 69; *Kennedy*, 234 Mich. at 494-95, 208 N.W. at 457; *Bowen*, 187 Mich. at 259, 153 N.W. at 672.

5

LaSalle asserts that the Court "discounts" the reasoning of *Kilpatrick Bros. Painting v. Chippewa Hills School District*, No. 262396, 2006 Mich. App. LEXIS 736 (Mich. Ct. App. Mar. 16, 2006). LaSalle misinterprets the Court's Opinion and Order. The Court does not dispute the reasoning of *Kilpatrick Bros.*, but rather, finds that it inapplicable to this set of facts. In *Kilpatrick Bros.*, the court was faced with a bond similar to the one at issue here. The bond owner, Chippewa Hills School District, had sent letters to the surety expressing its intent to declare a default, notifying the surety that it had terminated the construction contract, and offering to pay the remaining contract balance to the surety. *Id.* at *8-9. Because the bond owner had fulfilled the conditions set forth in paragraphs 3.1, 3.2, and 3.3 of the bond, the court concluded that the surety was obligated to perform.[2] *Id.* at *9. The surety argued that its performance should be excused by the bond owner's hiring of replacement contractors. The court disagreed, concluding that the surety elected to "investigate without objection," which was one of its options under the bond contract. Thus, the hiring of replacement contractors was not a material breach of the bond. *Id.* at *17-18. The evidence before this Court indicates that LaSalle failed to fulfill the conditions that were a prerequisite to the surety's liability in *Kilpatrick Bros*. *See id.* at *19-20. Despite LaSalle's assertions to the contrary, *Kilpatrick Bros.* does not excuse a bond owner's failure to satisfy conditions precedent.

### III. ACIC's Motion for Reconsideration

---

[2] The court's undertaking of this analysis suggests that LaSalle's interpretation of the law concerning conditions precedent is mistaken. This analysis would have been completely unnecessary if the surety was obligated to perform regardless of the bond owner's failure to fulfill such conditions.

6

ACIC has also filed a motion for reconsideration, urging the Court to reconsider its interpretation of *MacNear v. Malow*, 282 Mich. 239, 276 N.W. 433 (Mich. 1937), and *Rose v. Ramm*, 254 Mich. 259, 237 N.W. 60 (Mich. 1931). The Court cited these cases for the proposition that a bond owner's failure to satisfy the bond's notice requirements does not release the surety unless prejudice is established. ACIC contends that this rule should be limited to instances where the bond owner makes an attempt at providing the required notice, but does so in an untimely manner. ACIC asserts that where the bond owner makes no attempt to satisfy notice requirements, the surety need not demonstrate prejudice.

The Court does not believe that its conclusion was in error. ACIC correctly asserts that the surety in *Rose* received untimely notice. *Rose*, 254 Mich. at 261, 237 N.W. at 60. In that case, the court formulated the rule in general terms, stating: "Failure to give notice of default of principal does not discharge a paid surety unless loss is shown therefrom." *Id.* at 261, 237 N.W. at 61. This phrasing of the rule does not appear to limit its reach to cases where notice is untimely. However, ACIC points out that in applying the rule to the facts, the court stated that the surety "showed no injury from the delay of notice." *Id.* at 262, 237 N.W. at 61. The Court believes this statement did not limit the rule, but merely recognized that the particular deficiency of notice was the failure to provide *timely* notice.

The Court also concludes that it did not err in interpreting *MacNear*. In that case, the court stated: "The rule in Michigan is that failure to give notice promptly as required in the bond does not in and of itself release the surety unless the surety has been prejudiced or suffered loss by reason of such failure." *MacNear*, 282 Mich. 239, 243, 276 N.W. 433,

7

434 (Mich. 1937). The Court does not believe that inclusion of the word "promptly" limits the rule to cases of untimely notice, as ACIC suggests. As the source of this rule, the *MacNear* court quotes a decision holding that a surety's performance is not excused by "failure *or* delay in giving notice," absent a showing of prejudice. *Id.* at 245, 276 N.W. at 435 (quoting *Berkshire Land Co. v. Moran*, 210 Mich. 77, 83, 177 N.W. 205, 207 (Mich. 1920)) (emphasis added). This indicates that the rule is not limited to instances of untimely notice, and applies even where the obligee completely fails to provide the required notice.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that LaSalle's motion for reconsideration is **DENIED**;

**IT IS FURTHER ORDERED** that ACIC's motion for reconsideration is **DENIED**.

s/PATRICK J. DUGGAN<br>UNITED STATES DISTRICT JUDGE

Copies to:

Kelly M. Kammer, Esq.
Steven A. Wright, Esq.
Phillip G. Alber, Esq.
Omar J. Harb, Esq.

8